MARVIN E. HINSON AND FIRE ASSOCIATION OF PHILADELPHIA v. VIRGINIA-CAROLINA CHEMICAL CORPORATION.

(Filed 25 May, 1949.)

**1. Automobiles § 23a—**

Mere ownership does not impose liability for the negligence of the driver of an automobile, but liability of the owner rests upon the doctrine of *respondeat superior*, which applies only if the driver is the owner's employee and is at the time about the owner's business and acting in the course of his employment.

**2. Same—**

While not every deviation of the servant from the strict execution of his duty is sufficient to suspend the master's liability, if the servant, though originally bound upon a mission for his master, completely forsakes his employment and goes on an exclusively personal mission, the course of employment is interrupted and is not resumed until the servant returns to the path of duty where the deviation occurred, or to some place where in the performance of his duty he should be.

**3. Automobiles § 24½e—**

The evidence tended to show that defendant's driver was employed to transport certain workers to and from defendant's plant, that he was required to keep the car at defendant's plant during the night, that on the day in question, after discharging the last employee at his home, the driver went on an unauthorized personal mission of his own, and that the accident in suit occurred while the driver was returning to his work the next morning but before he had reached the place where the deviation from the course of his employment occurred. *Held:* The evidence is insufficient to be submitted to the jury on the issue of *respondeat superior*.

APPEAL by defendant from *Burney, J.,* at October Term, 1948, of NEW HANOVER.

Civil action to recover property damages resulting from alleged actionable negligence in which corporate plaintiff claims an interest by subrogation,—it having paid insurance on the property damaged.

This action grew out of a collision in North Carolina on Highway #76, between plaintiff's oil tanker and tractor, traveling west, and operated by one James N. Baker, and defendant's Chevrolet truck, traveling east, and operated by one S. C. Strickland. The collision occurred about 5 o'clock and "just before sun-up" on the morning of 21 July, 1945, at a point about a mile east of Hallsboro. Defendant denies that Strickland, at the time of the collision was its agent in the operation of the truck, and acting within the scope of his employment. And on the contrary, it avers that at the time of the collision Strickland was engaged in a private and personal enterprise.

Passing the evidence which tends to show that the collision in question was the proximate result of the negligence of Strickland, the operator of defendant's truck, the evidence as to the scope of his employment by defendant follows:

Strickland, as witness for plaintiff, among other things, testified: "My duties were to get up early every morning and go down to Delco or Malmo to pick up men and take them back to the plant, and in the afternoon to deliver them back home. I had been keeping the truck at night at different places where I boarded. I stayed at three different places while I worked for the V.C.C. Company, at Woodburn and at Leland and at the plant, where I was last staying . . . Mr. Owen . . . is the foreman of the Virginia-Carolina Chemical Corporation. His duties were to look after the plant and equipment . . . I asked Mr. Owen about keeping it (the truck) at the place I stayed on account of getting up early in the morning, and he give me permission to keep it . . . At the time of the accident I was living at Navassa . . . The three places I lived during my employment with the company were within a maximum of four or five miles of the plant. The men I was hauling were as far up as Delco . . . I was living in one of the Company's houses at the plant at the time of the accident . . . Mr. Owen knew that I was living at Bill Lewis' and he told me to keep the truck there every night to keep from walking so far in the morning. He told me to keep it there so I could go backwards and forwards to work and pick up the labor every morning."

And Strickland, as witness for plaintiff, also testified: "On the morning of July 21, 1945, I was operating a truck out on the highway near Hallsboro, N. C. . . . I had been to Hallsboro and had left the truck at the Cedar Inn Service Station . . . during the night with people I knew.

and had went several places with some more boys and girls. The next morning about time to go to work, about 5 o'clock, I come along and picked up the truck and was headed back to pick up labor and I got in the accident . . . I would say it was two miles below Delco where I would pick up some of the hands and this point is about the same distance from the plant at Navassa and the filling station where I had parked the car the night before the wreck . . . On the morning of July 21, 1945, I was headed to about two miles this side of Delco to pick up the first laborer and then go into Armour and Acme and get some more . . . The afternoon before the accident, after I had left the plant, I went to Hallsboro to see my girl friend and parked the truck at her house . . . After I got to Hallsboro I went with several of my friends to Chadbourn and we ate and drank and stayed up all night . . . Mr. Owen didn't know I had the truck at Hallsboro that night, and Mr. Robinson didn't either. I mentioned it to Wilkinson, the mechanic, that give me right smart orders. On Friday afternoon, July 20, 1945, between 4:30 and 5 o'clock he told me to drive the truck on up there; that it would be all right. He had promised to go up there with me, and we were supposed to drive his car up there and something happened . . . Mr. Shackelford was what I would call chief mechanic. He didn't tell me I could use the truck to go to Hallsboro . . . I made a statement about this shortly after this thing took place and signed one . . . I think I said I didn't get authority from any one except Wilkinson to take the truck up there. The Company didn't send me down there. I went on my own. Some nights I took the truck back to the plant and some nights I didn't. I had not been given permission to drive the truck to Hallsboro and go where I pleased. In the statement I said I went to different employee's houses and left them . . . Julius F. Duvall . . . was the last passenger I let out. At his home I pulled off the highway and got stuck in the mud . . . and after I got out I decided to go to Hallsboro. I reckon that's what I said. I ain't saying it is and I ain't saying it's not . . ." And again, "so far as I know this was a part of the statement I signed: 'On July 20th when I let my last passenger out at Delco I knew I was not supposed to go any further, and taking the truck to Hallsboro was absolutely against the rules laid down by my company. This trip I took was unauthorized and my company did not send me to Hallsboro.' It was the truth they didn't send me to Hallsboro. I had never taken the truck before for my own use, no more than getting something to eat . . . I do remember saying the trip was not authorized by anybody. I didn't put in the statement that Mr. Wilkinson authorized it because he had a family and I didn't want to get him mixed up in it. Mr. Robinson hired me and sent me to Mr. Shackelford; I took orders from him and Mr. Wilkinson as far as greasing the trucks and changing oil, or anything

that needed to be done to the truck when I was not driving. Mr. Wilkinson was a mechanic. If he had authority to hire and fire I didn't know it. Mr. Robinson is the general superintendent and has been there right many years."

And in connection with this evidence, these facts do not appear to be in dispute: Both Delco and Hallsboro are located on Highway #76 which runs about east and west, from Wilmington on the east to and beyond Whiteville on the west. From Wilmington to Whiteville it is about 48 miles. Navassa, where defendant's plant is located, is just north of the highway, and a short distance from Wilmington. From Navassa to the highway and in a western direction it is about nineteen miles to the point near Delco where the last laborer was put out of the truck on late afternoon of 20 July, that is, of the day before the collision. And in going west from this point it is about 20 miles to Hallsboro. Whiteville is still farther west, and Chadbourn is west of Whiteville.

Motions of defendant made in apt time for judgment as in case of nonsuit were denied, and it excepted. And the case was submitted to the jury,—and from judgment, on verdict in favor of plaintiffs, defendant appeals to the Supreme Court and assigns error.

*Marsden Bellamy, Clayton Holmes, and David H. Scott for plaintiff, appellee.*

*Stevens, Burgwin & Mintz for defendant, appellant.*

WINBORNE, J. Defendant, in brief filed in this Court, very frankly states that there is no serious dispute but that Strickland, who was one of its employees and who was operating its truck at the time of the accident, was guilty of negligence. And, assuming this to be true, defendant contends, and rightly so, that the real question presented is as to whether the doctrine of *respondeat superior* applies under the facts of this case. That is, the underlying and basic question presented by defendant's exception to the denial of its motions, aptly made, for judgment as in case of nonsuit, is this: Was Strickland acting within the scope of his employment by defendant at the time of and in respect to the collision resulting in damage to property, of which plaintiffs complain?

In the light of pertinent decisions of this Court, we are of opinion and hold that the answer to the question is "No." See *Martin v. Bus Line,* 197 N.C. 720, 150 S.E. 501; *Parrott v. Kantor,* 216 N.C. 584, 6 S.E. 2d 40; *McLamb v. Beasley,* 218 N.C. 308, 11 S.E. 2d 283; *Riddle v. Whisnant,* 220 N.C. 131, 16 S.E. 2d 698; *Rogers v. Town of Black Mountain,* 224 N.C. 119, 29 S.E. 2d 203; *Carter v. Motor Lines,* 227 N.C. 193, 41 S.E. 2d 586.

From these and numerous other decisions of this Court to like effect, these applicable principles are found : The owner of an automobile is not liable for damages caused by it merely because of its ownership. The liability, if any, of the owner of an automobile operated by another rests solely upon the doctrine of *respondeat superior.* And this doctrine applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged for the result of the wrong at the time of, and in respect to the very transaction out of which the injury and damage arose. The rule is well settled that the master is responsible for the tort of his servant which results in injury to another when the servant is acting in the course of his employment, and is at the time about the master's business. And it is equally well settled that the master is not liable if the tort of the servant which causes the injury occurs while the servant is acting outside the legitimate scope of his authority, and is then engaged in some private matters of his own. *McLamb v. Beasley, supra.*

"A servant is acting in the course of his employment, when he is engaged in that which he was employed to do, and is at the time about his master's business. He is not acting in the course of his employment, if he is engaged in some pursuit of his own. Not every deviation from the strict execution of his duty is such an interruption of the course of employment as to suspend the master's responsibility; but, if there is a total departure from the course of the master's business, the master is no longer answerable for the servant's conduct," Tiffany on Agency, p. 270. *Robertson v. Power Co.,* 204 N.C. 359, 168 S.E. 415.

And, with respect to departure from employment, without consent of owner, it is stated in 5 Blashfield's Cyc. of Automobile Law and Practice, Section 3029, that "the general rule is that a servant in charge of his master's automobile, who, though originally bound upon a mission for his master, completely forsakes his employment and goes on an errand exclusively his own, and while so engaged commits a tort, does not thereby render the master answerable for such tort under the rule of *respondeat superior.*" See *Parrott v. Kantor, supra.*

The trend of judicial decisions, as stated in *Parrott v. Kantor, supra,* is that the departure commences when the servant definitely deviates from the course or place where in the performance of his duty he should be. And while there is conflict of authority on the subject, better reason supports the view that after a servant has deviated from his employment, for purposes of his own, the relation of master and servant is not restored until he returns to the path of duty, where the deviation occurred, or to some place, where in the performance of his duty, he should be.

Applying these principles to the evidence in the case in hand, we hold that the moment when Strickland, the operator of defendant's truck,

after completing delivery of the employees to their homes, the last one to a point near Delco, in the course of his employment, turned aside from his duty to drive the truck back to the plant at Navassa, where he says he was ordered to keep it at night, and drove on to Hallsboro, 20 miles farther away from the plant, without permission of any authorized superior, and in pursuit of private purposes of his own, he departed from his employment and remained outside of it until he returned to the point of departure. Until he reached that point, he was only returning to his employment. See *Parrott v. Kantor, supra.* And, the collision having occurred before he reached there, the defendant, his master, is not liable for his tort in bringing about the collision, and the consequent damages of which plaintiffs complain.

For reasons stated, the motions of defendant for judgment as in case of nonsuit, should have been sustained. Hence the judgment below is
    Reversed.