GEORGE THROWER, TRADING AS BOULEVARD SUPERMARKET, v. COBLE DAIRY PRODUCTS CO-OPERATIVE, INC.

(Filed 29 October, 1958.)

**1. Corporations § 26: Principal and Agent § 10—**

Evidence that defendant corporation's agent obtained the signatures of plaintiff's employees to invoices for products delivered and, by the use of carbons, to additional invoices, which the agent later filled in, and obtained payment for both the genuine and spurious invoices, is sufficient predicate for liability of defendant corporation under the general rule that the principal is liable for the fraud of its agent committed while acting within his authority.

**2. Same—**

The purchaser of products, in permitting the seller's agent to deposit invoices, over the course of years, in a receptacle in the purchaser's office, is not guilty of negligence barring recovery for the fraud of the seller's agent in thus presenting both genuine and spurious invoices, since the seller selected the agent, and it is necessary to trade and commerce that a party may rely on the integrity of men.

**3. Evidence § 26—**

Where plaintiff demands that defendant produce the original invoices for the purpose of ascertaining which carbon copies in plaintiff's possession are genuine and which spurious, and defendant states that the originals are not available, defendant cannot complain of the introduc-

tion of the carbons in evidence, since it is apparent that defendant had within its power the means of establishing the matter if plaintiff were in error as to which of the invoices are genuine and which spurious.

**4. Damages § 14—**

While the damages must be established with reasonable certainty, it is not required that they be established with absolute certainty, and where plaintiff has paid both genuine and spurious invoices, the ascertainment of the amount of the spurious invoices by taking the invoices for the less amount for those days during which both a genuine and a spurious invoice were paid, establishes the amount of damages with reasonable certainty, and is sufficient.

PARKER, J., not sitting.

APPEAL by defendant from *Froneberger, J.,* December, 1957 Civil Term, GASTON Superior Court.

Civil action to recover $21,200 which the plaintiff alleged the defendant, through its agent and servant, Raymond Queen obtained by false pretenses from the plaintiff. The defendant denied that Queen was acting as its agent; that if it be found to the contrary, the "negligence and lack of care in the operation of his business and in his dealings with . . . Queen, . . . aided, abetted, and contributed" to any loss sustained by him. The parties waived a jury trial and stipulated the presiding judge "should hear the matter, find the facts, and render judgment."

The plaintiff's evidence in short summary tended to show: During the time involved, the plaintiff operated a grocery store and market in the Town of Belmont. From August, 1953 to February, 1956 the plaintiff purchased on open account from the defendant corporation its milk and dairy products delivered at his store. In these transactions Raymond Queen was the agent and employee of the defendant, except for about five months beginning April 21, 1954. In connection with his deliveries, and as a means of keeping account of them, Queen made use of invoice tickets consisting of an original and one or more carbon copies. However, he employed the device of withdrawing the carbon paper from all except the first copy at the time he listed the purchases, and then reinserted the carbon for the other copies before he obtained the signature of the plaintiff's employee whose duty it was to approve the invoice. The result was an original ticket, one correct carbon copy with the approval signature of the plaintiff's employee, and one or more blank copies with the carbon signature of the employee. Thereafter Queen filled out the additional copy, or copies, showing fictitious deliveries. He then deposited all carbon copies, both genuine and spurious, in a receptacle in the plaintiff's office. At the end of each week he collected not only for the amount

showing the actual delivery, but for the amount shown on the spurious invoices.

The plaintiff's evidence tended to show that only one delivery was made on Mondays, Thursdays, and Sundays. On many Mondays and Thursdays, and on one Sunday, Queen submitted and collected for more than one invoice. About once each month as many as two deliveries were made on Wednesdays and Fridays. Frequently Queen submitted and collected for two or three invoices on Wednesdays and Fridays. No deliveries were actually made on Tuesdays, but Queen submitted and collected for invoices on that date. The plaintiff offered in evidence all invoices (genuine and spurious) left with the plaintiff by Queen, and plaintiff's checks in payment.

The court examined all checks and invoices, and made its determination as to which were spurious. The court thus stated its method of fixing the plaintiff's loss: "In arriving at the amount of loss sustained by the plaintiff the court has given the defendant the benefit of the invoices for the larger amount and in the computation of the said loss by the plaintiff has taken the invoices for Wednesdays stating the lesser amounts." A similar method was followed in determining the loss for the other days for which invoices were submitted.

The defendant did not offer any evidence. The court found the plaintiff had paid $15,579.25 for milk products not delivered, rendered judgment accordingly, and the defendant appealed.

*Carpenter & Webb, By: William B. Webb for defendant, appellant.*
*E. R. Warren, Whitener & Mitchem, By: Basil L. Whitener, By: Wade W. Mitchem for plaintiff, appellee.*

HIGGINS, J.   The defendant presents three questions for review: (1) Is the defendant responsible to the plaintiff for the loss caused by Queen's falsification of the invoices? (2) Is the plaintiff barred from recovery by his negligent failure to discover and prevent Queen's fraud? (3) Did the court err in fixing the amount of the recovery?

The evidence is amply sufficient to support the court's findings that Queen was "an employee, agent, and servant of the defendant corporation . . . was acting in the course and scope of his employment in dealing with the plaintiff and the controversy herein involved arises out of the acts of said Queen as agent, servant, and employee." The general rule is that a principal is responsible to third parties for the fraud of its agent while acting within his authority. "It is elementary that the principal is liable for the acts of his agent, whether malicious or negligent, and the master for similar acts of his servant, which result in injury to third persons, when the agent or servant is acting within the line of his duty and exercising the functions of his employment." *Dickerson v. Refining Co.*, 201 N.C. 90, 159 S.E. 446.

"There is no reason that occurs to us why a different rule should be applicable to cases of deceit from what applies to other torts. A corporation can only act through its agents, and must be responsible for their acts. It is of the greatest public importance that it should be so. If a manufacturing and trading corporation is not responsible for the false and fraudulent representations of its agents, those who deal with it will be practically without redress and the corporation can commit fraud with impunity." *Peebles v. Patapsco Co.,* 77 N.C. 233. The master is liable for the unlawful or negligent acts of his servant if about the master's business, and if doing or attempting to do that which he was employed to do. *Snow v. DeButts,* 212 N.C. 120, 193 S.E. 224.

The evidence in this case shows the court found the fraud was committed in the sale of defendant's products and in the padding of accounts its agent was authorized to collect. The defendant is liable for plaintiff's loss.

The defendant here contends the plaintiff is barred from recovery by his own negligence in permitting Queen to deposit the invoices in a receptacle in plaintiff's office. This from his brief: "In permitting the practice to continue for that period (2½ years) the plaintiff chose to put his faith and trust in Queen. Such was not a faith and trust solicited by the defendant." The argument is not persuasive. It ignores the fact that Queen was selected and sent out by the defendant as its agent to sell and deliver, and collect for its products. "Where a loss is to be suffered through the misconduct of an agent, it should be borne by those who put it in his power to do the wrong, rather than by a stranger." *Bank v. Liles,* 197 N.C. 413, 149 S.E. 377. There must be reliance on the integrity of men, or else trade or commerce could not prosper. *Gray v. Jenkins,* 151 N.C. 80, 65 S.E. 644; *Machine Co. v. Bullock,* 161 N.C. 1, 76 S.E. 634. The plaintiff's conduct in trusting Queen does not preclude the recovery.

The defendant challenges the amount found by the court (acting as the jury) to be plaintiff's loss by reason of Queen's fraudulent invoices. In support of its assignment of error No. 18, the defendant offers the following in its brief: "Surely such testimony as that admitted by the court over objection to the effect that his milk bills were 'right around $2,500 a month' before Queen's arrest and 'around $1,500' after his arrest, furnishes no such foundation. Apart from its vagueness, this was a clear violation of the best evidence rule." There was also evidence that in the year 1955 the plaintiff had an operating loss of $24,000, and that on a smaller volume in 1956 (during which Queen made deliveries for only one month) the plaintiff showed a profit of $9,000. The evidence was offered without objection. The defendant cannot justly complain of the violation of the best evidence rule.

Queen gave the plaintiff carbon copies of all invoices, genuine and spurious. The plaintiff introduced them in evidence, together with the checks that paid them. The evidence is that Queen kept the genuine originals and presumably settled with his employer on the basis of these only. The plaintiff demanded that the defendant produce them. The demand was met with the statement they were not available. It is fair to assume, therefore, the defendant had within its power the means of ascertaining the amount of plaintiff's loss. Not only did defendant fail to produce the original invoices, it failed to offer any evidence. The plaintiff offered the admission of Queen that he raised the tickets from $100 to $125 per week in excess of his actual deliveries.

In case a jury trial is waived, the court's findings of fact are conclusive upon appeal, if there is evidence to support them. *Burnsville v. Boone*, 231 N.C. 577, 58 S.E. 2d 351. "The amount of damages must be established with reasonable, but not with absolute certainty, . . . absolute certainty is not required; it is sufficient if a reasonable basis or computation is afforded, though the result be only approximate; . . ." 25 C.J.S., Damages, sec. 26(c), p. 491. "However, where actual pecuniary damages are sought, there must be evidence of their existence and extent, and some data from which they may be computed." *Norwood v. Carter*, 242 N.C. 152, 87 S.E. 2d 2; *Story Parchment Corp. v. Patterson Parchment Paper Co.*, 282 U. S. 555; *Eastman Kodak Co. v. Southern Photo Materials Co.*, 273 U. S. 359.

The evidence furnished sufficient support for the court's finding as to the amount of plaintiff's loss. The findings are sufficient to sustain the judgment. The defendant's assignments do not present error of substance. The judgment is

Affirmed.

PARKER, J., not sitting.