PATRICIA L. EDWARDS v. TYRONE AKION AND THE CITY OF RALEIGH, NORTH CAROLINA

No. 8010SC961

(Filed 7 July 1981)

1. **Municipal Corporations § 12.3— waiver of governmental immunity by purchase of insurance**

    Under the common law, a municipality is not liable for the torts of its employees committed while performing a governmental function; however, a

Edwards v. Akion

municipality's immunity from civil liability in tort is waived under the authority of G.S. 160A-485(a) by the purchase of liability insurance.

2. **Insurance § 149; Municipal Corporations § 12.3— intentional assault—coverage by municipal liability policy**

An intentional assault by a municipal employee was an "occurrence" within the meaning of a liability policy purchased by the municipality and was covered by the policy, although neither expected nor intended by the municipality, if committed within the scope of the employee's duties.

3. **Municipal Corporations § 21.5— assault by sanitation worker—scope of employment**

In an action against a city to recover for injuries sustained by plaintiff when she was assaulted by a city sanitation worker, a genuine issue of material fact was presented as to whether the sanitation worker was acting within the scope of his employment at the time of the assault where the materials on motion for summary judgment showed that plaintiff and the sanitation worker engaged in an argument about whether the worker should pick up additional refuse from behind plaintiff's home; plaintiff went into her house and attempted to call the sanitation department; and plaintiff then went to the garbage collection truck which was still parked in front of her house and was trying to tell the truck driver what happened when the sanitation worker struck her several times.

4. **Municipal Corporations § 21.5— assault by city employee—negligent supervision**

In an action against a city to recover for injuries sustained by plaintiff when she was assaulted by a city sanitation worker, a genuine issue of material fact was presented on the issue of whether the sanitation worker was negligently supervised where plaintiff presented affidavits to the effect that the driver of the sanitation truck, who was in a supervisory position over the sanitation worker, refused to intervene on plaintiff's behalf, and where the city introduced affidavits indicating that the driver in fact attempted to restrain and control the sanitation worker.

Judge HILL dissenting.

APPEAL by plaintiff from *Farmer, Judge.* Judgment entered 15 August 1980 in Superior Court, WAKE County. Heard in the Court of Appeals 8 April 1981.

Plaintiff brought this action seeking compensatory and punitive damages for personal injuries she sustained during an altercation with defendant Akion, an employee of defendant City of Raleigh.

The City provides refuse collection services to Mrs. Edwards's home in Raleigh, North Carolina. On 4 August 1978, a team of refuse collectors, including Akion, collected garbage from

Mrs. Edwards's residence. An argument ensued between her and Akion concerning the manner in which he had performed the services. Mrs. Edwards was knocked to the ground twice and received injuries.

Upon hearing, the City's motion for summary judgment was granted. Additional facts pertinent to this appeal are set out below.

*DeMent, Redwine & Askew, by Johnny S. Gaskins, for plaintiff appellant.*

*Teague, Campbell, Conely & Dennis, by Richard B. Conely, for defendant appellee, City of Raleigh.*

MARTIN (Harry C.), Judge.

Plaintiff seeks to recover from the City of Raleigh upon two theories. First, she alleges that Akion committed an assault and battery upon her while he was acting within the scope of his employment, imputing liability to the City. Second, she contends that the City negligently failed to supervise the activities of Akion, and that this negligence proximately caused her injuries. Plaintiff's sole assignment of error deals with the propriety of the trial court's granting summary judgment in favor of the City on these claims.

The standard for determining whether summary judgment is appropriate is set out in Rule 56(c) of the North Carolina Rules of Civil Procedure and is thoroughly explained in *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971). The moving party must clearly establish that there is no triable issue of fact and that it is entitled to judgment as a matter of law. *Yount v. Lowe*, 288 N.C. 90, 215 S.E. 2d 563 (1975). In an action based on negligence, summary judgment for a defendant is proper where the evidence demonstrates no negligence by the defendant or contributory negligence by the plaintiff, or where it is established that the defendant's negligence was not the proximate cause of the plaintiff's injury. *Hale v. Power Co.*, 40 N.C. App. 202, 252 S.E. 2d 265, *disc. rev. denied*, 297 N.C. 452 (1979). Applying these principles, we must conclude that the trial court erred in granting summary judgment for the City.

[1]　Plaintiff has conceded that Akion's actions constitute an intentional tort and that the refuse collection service provided by the City is a governmental function. Under the common law, a municipality is not liable for the torts of its employees committed while performing a governmental function. *Galligan v. Town of Chapel Hill*, 276 N.C. 172, 171 S.E. 2d 427 (1970); *Town of Hillsborough v. Smith*, 10 N.C. App. 70, 178 S.E. 2d 18 (1970), *cert. denied*, 277 N.C. 727 (1971). This immunity is waived only under the authority of statute. *Id.* N.C.G.S. 160A-485(a) authorizes a city to waive its immunity from civil liability in tort by purchasing liability insurance. Immunity is waived only to the extent that the city is indemnified by the insurance contract. *Id. See White v. Mote*, 270 N.C. 544, 155 S.E. 2d 75 (1967). All issues of law or fact relating to insurance coverage are heard and determined by the judge sitting without a jury, unless the city waives this right and demands a jury trial on insurance issues. N.C. Gen. Stat. 160A-485(d).

The City of Raleigh purchased a liability insurance policy from the South Carolina Insurance Company. The policy is included as an exhibit in the record, and was in effect at the time plaintiff's injury occurred. The City is the named insured under the terms of the policy. Persons insured include "the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such . . .." An endorsement amends the policy "to include any employee of the named insured while acting within the scope of his duties as such . . .." The policy states: "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . bodily injury . . . to which this insurance applies, caused by an occurrence . . .." It defines an "occurrence" as "an accident . . . which results in bodily injury . . . neither expected nor intended from the standpoint of the insured." There is no provision expressly excluding intentional acts.

[2]　The first issue, then, is whether an intentional assault can be an "occurrence" within the meaning of the insurance policy. The language of the policy clearly provides that the expectations or intent are to be viewed from the standpoint of the insured, as opposed to that of the injured party. The City argues that because Akion was covered as an additional insured under the endorse-

ment, the event should be viewed from his standpoint, and that because plaintiff contends Akion intentionally assaulted her, his actions were outside the coverage of the policy. We do not agree. The City is the named insured. It certainly did not expect or intend that its employees would assault a third party. As to the City, the acts of Akion were an "occurrence" under the terms of the insurance policy.

The use of the term "insured" in this context is ambiguous. Such ambiguities are to be construed against the insurer. *See Insurance Co. v. Insurance Co.*, 269 N.C. 341, 152 S.E. 2d 436 (1967). "The insurance companies have it within their power, by simplicity and clarity of expression, to remove all doubt." *Bone v. Insurance Co.*, 10 N.C. App. 393, 395, 179 S.E. 2d 171, 172, *cert. denied*, 278 N.C. 300 (1971) (noting that it is a well established rule in this jurisdiction that an intentional assault, unforeseen and unprovoked, *against* an insured is to be considered accidental).

Even when an insurance policy expressly excludes coverage for intentional injuries, there exists a significant split of opinion as to whether an assault will be covered. *See* 44 Am. Jur. 2d Insurance § 1411 (1969) (and cases cited therein); Annot., 2 A.L.R. 3d 1238 (1965). Where there is no specific exclusionary clause, but, instead, the language is similar to that used in the policy here in question, the courts are even more inclined to hold in favor of coverage. *See* 44 Am. Jur. 2d, *supra*, § 1412; Annot., 33 A.L.R. 2d 1027 (1954). We feel the better approach is that described in 44 Am. Jur. 2d, *supra*, § 1411:

> [W]here a third person seeks to recover from an insured on the basis of injuries or damages allegedly caused by an agent of the named insured, in the absence of a showing that the injury complained of was "at the direction of" the named insured, a liability insurer is not relieved of its obligation to the insured by an "intentional injury or damage" clause. Even though injuries or damages have been intentionally caused by a person who would be an "additional" insured under the terms of a particular liability policy, it has been held that an "intentional injury or damage" exclusion clause does not relieve the insurer of its obligations to the "named" insured where the injured person seeks to recover from the "named" insured rather than the "additional" insured, at

least in the absence of a showing that the injurious acts were directed by the named insured.

In *Jackson v. Casualty Co.*, 212 N.C. 546, 193 S.E. 703 (1937), our Supreme Court held that an intentional assault by the driver of an automobile was not covered by an automobile insurance policy covering accidental injury. Later, in *Insurance Co. v. Roberts*, 261 N.C. 285, 134 S.E. 2d 654 (1964), however, the Court noted that in *Jackson*, North Carolina had aligned itself with the minority view, and held that an intentional assault with an automobile would be considered an accident, but only where the insurance coverage was mandatory. This decision was based on the statutory purpose of mandating compulsory motor vehicle insurance to compensate innocent victims, "not, like that of ordinary insurance, to save harmless the tortfeasor himself." *Id.* at 291, 134 S.E. 2d at 659. We believe a similar rationale applies to a liability policy procured by a city. As a city is ordinarily immune from tort liability, when it voluntarily waives that immunity by purchasing liability insurance, it obviously does so to protect innocent victims. By extending its coverage to city employees, the clear intent is to protect victims from acts of the employees as well as its officers, directors, and stockholders. The endorsement amended "persons insured" under the policy to include employees acting within the scope of their duties. We hold that the policy covers intentional torts committed by a City employee, when neither expected nor intended by the City, *if* these actions were committed within the scope of the employee's duties.

**[3]** The next question is whether Akion's actions were committed within the scope of his employment. Acting within the scope of employment means doing what one was employed or authorized to do: *Wegner v. Delicatessen*, 270 N.C. 62, 153 S.E. 2d 804 (1967); *Thrower v. Dairy Products*, 249 N.C. 109, 105 S.E. 2d 428 (1958). An act is within the scope of an employee's implied authority, even if it is contrary to the employer's express instructions, when the act is done in the furtherance of the employer's business and in the discharge of the duties of employment. *West v. Woolworth Co.*, 215 N.C. 211, 1 S.E. 2d 546 (1939). The employer is liable if its employee, in performing his duties, adopts a method which constitutes a tort and inflicts an injury upon a third party. *Id. See also* Annot., 6 A.L.R. 985, 1007 (1920). To relieve the employer of responsibility, it is not sufficient to show that the employee was violating a rule or instruction. *Duckworth*

*v. Metcalf,* 268 N.C. 340, 150 S.E. 2d 485 (1966); *Hinson v. Chemical Corp.,* 230 N.C. 476, 53 S.E. 2d 448 (1949). However, there is a difference between carrying out the employer's business and attempting to punish one who interferes with that business. *See Clemmons v. Insurance Co.,* 274 N.C. 416, 163 S.E. 2d 761 (1968); *D'Armour v. Hardware Co.,* 217 N.C. 568, 9 S.E. 2d 12 (1940); *Overton v. Henderson,* 28 N.C. App. 699, 222 S.E. 2d 724 *disc. rev. denied,* 290 N.C. 95 (1976).

We find *Munick v. Durham,* 181 N.C. 188, 106 S.E. 665 (1921), to be instructive. In *Munick,* the plaintiff went to the office of the city water-works to pay his water bill. He paid with four dollars and a roll of fifty pennies. A clerk gave him a receipt and was re-counting the pennies as the plaintiff was leaving the office. The manager of the water-works came out, became upset about the pennies, pushed them onto the floor, and demanded the plaintiff take them back. The manager became verbally abusive, then physically assaulted the plaintiff. The trial court granted nonsuit in favor of the city at the close of the plaintiff's evidence, on the grounds that the assault by the manager was not within the scope of his authority. The Supreme Court reversed, holding that at the time of the assault, the manager was acting in his capacity as agent for the city, stating: "He was there in the prosecution and furtherance of the duties assigned to him by the defendant municipality. . . . 'Acting within the scope of employment means while on duty.' " *Id.* at 193, 106 S.E. at 667 (citations omitted). Although the plaintiff in *Munick* was an invitee on the city's prop-erty, Akion, like the office manager in *Munick,* was at the place his municipal employer had assigned him. Nor is it determinative that the Court in *Munick* found that the city there was acting in a business capacity rather than performing a governmental func-tion, as that distinction pertains only to the issue of governmental immunity from tort liability, previously addressed.

The City relies on the majority opinion in *Robinson v. Sears, Roebuck & Co.,* 216 N.C. 322, 4 S.E. 2d 889 (1939) (Seawell, J., dissenting), as authority for its position that Akion was not acting within the scope of his employment. In that case, the plaintiff, a customer in the defendant corporation's store, remonstrated with an employee for the language he had directed at other employees. The employee directed the plaintiff outside and then assaulted him. The plaintiff testified that the conversation between the two

of them had not been about the corporate defendant's business, but rather about "a personal matter." In affirming the trial court's granting nonsuit in favor of the corporate defendant, our Supreme Court held that "where an assault by an employee is purely personal, having no connection with the employer's business but a merely accidental or incidental one, the doctrine of *respondeat superior* is inapplicable and cannot be successfully invoked to support a recovery against the employer." *Id.* at 323, 4 S.E. 2d at 890. Unlike the situation in *Robinson,* however, plaintiff here has not admitted that the altercation was over a personal matter, but, instead, asserts that it involves the services that Akion was performing at her home.

Nor do we find *Wegner, supra,* controlling. In *Wegner,* the plaintiff's evidence at trial demonstrated that he had been assaulted by a bus boy employed by defendant, "not for the purpose of doing anything related to the duties of a bus boy, but . . . for some undisclosed, personal motive." 270 N.C. at 68, 153 S.E. 2d at 809. The plaintiff had requested the bus boy to remove dirty dishes from his table. While so doing, the employee also took the plaintiff's clean glass, which the plaintiff requested him to replace. The bus boy slammed a glass on the table, walked away, and then began an argument with the plaintiff, which culminated in the employee's physically attacking the plaintiff. The Supreme Court held that the trial court had properly granted nonsuit for the defendant corporation at the close of all the evidence, as the employee's actions could not be deemed an act of his employer. The Court noted, however, that the result would have been different if, instead of the bus boy's walking away, the glass he slammed down on the plaintiff's table had shattered, injuring the plaintiff, because in that case the employee would have been performing an act, which he had been employed to do, in a negligent or improper manner.

In contrast, in the case sub judice, the affidavits and depositions show that Mrs. Edwards and Akion were quarreling about whether the latter should pick up additional refuse from behind plaintiff's home. The collection truck was still in front of her house, and the dispute concerned whether Akion had completed the service he was there to do.

In her affidavit, plaintiff stated:

6. That she made an effort to discuss with Tyrone Akion the manner in which he had attempted to collect her garbage.

7. That Tyrone Akion then began to hit her with his fists and to kick her with his feet.

8. That this assault and battery occurred without her having provoked Tyrone Akion in any way which would have justified such actions.

Her neighbor Aaron Bass, who witnessed part of the affray, testified in his sworn deposition:

The first thing that drew my attention to her was her calling to the gentlemen asking him to wait. I think this was her words, "wait." I am referring to Tyrone Akion when I refer to the gentlemen. At that time she was several yards behind him as he was going to the garbage truck. She was trying to get his attention. She was coming down towards the street. He was in front of her. Near the truck. He was carrying a can. A garbage can. . . . I don't recall whether "yelling" is what she was doing. I heard her calling, "Wait. Wait." I heard this across the street from my house. After I heard that, then I look up, and I saw her coming along the street behind him. I then went back to work on my steps. Immediately after that I heard some cursing. My memory may be a little faulty. I think both of them were raising their voices at each other.

. . . And by the time I looked over there, she was already on the pavement down here. I had previously seen her coming down. The next time I saw her she was on the ground.

The City submitted affidavits of the sanitation superintendent for the City, one of which described Akion's responsibilities:

Mr. Tyrone Akion was employed by the City of Raleigh as a sanitation laborer. The duties of this position include collecting garbage from houses and businesses; emptying garbage into the collection truck; operating the packing mechanism . . ..

The only contact allowed with the public is the answering of routine questions concerning service. Any complaints concerning service or his duties in general are to be reported

to his supervisor and not handled personally by the sanitation laborer. Any additional public contact would be outside of Mr. Akion's area of responsibility and not approved by the City.

The investigative notes of a detective for the Raleigh Police Department were submitted with the officer's affidavit, and contained statements given to him during the course of his investigation. The statement of Aaron Bass included: "I was working in my yard when I heard our neighbor, Patricia Edwards, calling the garbage man to 'wait.' She called him several times and he ignored her. When I looked up she was on the ground and I rushed over to the yard . . .."

Another neighbor told the officer she had seen a garbage truck parked in front of plaintiff's house and a man yelling, cursing, and swinging at Mrs. Edwards.

While hospitalized, Mrs. Edwards told the officer:

The garbage man emptied two of the garbage cans into a yellow tub and left the other. He started back to his truck, and I call to him several times and he paid no attetion to me. I finally caught up with him at the truck. He said that he had only two hands and I was trying to hassle him (He said that) He said this about four (4) times. Then he (garbage man) started to walk away to the neighbors. He walk [sic] on and I called him a S.O.B. Then he took off his gloves and dropped his tub and walked up to me right in my face. He asked me was I trying to call his mother a bitch. I said no, all I want you do to is pick up my trash. He finally walked off and I went back into the house and tried to call the sanitation dept several times and I could not get an answer. I opened the front door and the truck driver or someone with the truck was standing by the truck. I walked out to the truck driver and proceeded to tell him what had happened and that I had call [sic] the (garbage man) a S.O.B. and about the trash. I was trying to tell him what happened when the (garbage man) threw down his gloves and ran over to me. He (garbage man) said he didn't have to take this . . . from this white trash. Then he grabbed my shirt and began hitting me with his fist several times.

Although other crew members told the detective that Mrs. Edwards began the dispute, George Fogg, one of the workers, stated that Akion told him the disagreement did concern the garbage collection.

Another police officer's affidavit included a summary of his knowledge of the events. He stated that Akion told the magistrate that the dispute was over whether he should pick up a certain type of garbage behind plaintiff's house.

In light of the above evidence before the trial court, we cannot say, as a matter of law, that Akion was not acting within the scope of his employment at the time he allegedly assaulted Mrs. Edwards. When there is a dispute as to what the employee was actually doing at the time the tort was committed, all doubt must be resolved in favor of liability and the facts must be determined by the jury. *Pinnix v. Griffin*, 219 N.C. 35, 12 S.E. 2d 667 (1941); *Long v. Eagle Store Co.*, 214 N.C. 146, 198 S.E. 573 (1938). The doctrine should be applied liberally, especially where the business involves a duty to the public, and the courts should be slow to assume a deviation from the duties of employment. 8 Strong's N.C. Index 3d Master and Servant § 34 (1977). In this case, the facts surrounding the incident are not unequivocal, and a jury should determine whether the alleged assault arose out of personal animosity or an effort by Akion to accomplish the duties assigned him.

[4]  Similarly, the issue of whether Akion was negligently supervised involves a question of material fact. Affidavits submitted by the City indicates that Akion was to report any complaints or problems to his supervisor. The City, in its answers to plaintiff's interrogatories, admitted that James Allen, driver of the collection truck, was the general "lead man" for the crew, and was responsible for conveying instructions to Akion. Allen "was responsible to the supervisor for ensuring that assigned collection crew completed their daily task. He resolved minor complaints. Matters that he could not resolve were telephoned to the Sanitation Office and were dispatched by radio to supervisor."

The City concedes that if Allen were negligent in the performance of his supervisory role as alleged, and if such negligence proximately caused plaintiff's injuries, its insurance policy would provide coverage. Plaintiff, in her affidavit, claimed Allen could

have, but refused, to intervene on her behalf. Aaron Bass, in his deposition, stated:

> Tyrone Akion had been moved over into the yard, also, but near the rear of the truck. The other two gentlemen were not physically holding him. He was over there with them. . . .
>
> I did not notice whether the other gentlemen that were with Mr. Akion had begun to hold him at any time. I am referring to the period prior to Mrs. Edwards' breaking away from me. My impression was that they were afraid of him. They attempted to move themselves physically between them. Between the combating individuals. But they seemed to be afraid to put their hands on him. My impression is that they did not attempt to hold him.

The City introduced affidavits indicating that Allen in fact attempted to restrain and control Akion. Thus the question of negligent supervision must be submitted to the jury.

Nor is the record unequivocal, as the City argues, regarding evidence that plaintiff assumed the risk of injury by voluntarily participating in the altercation, thereby barring her claim if the City were to be found negligent. *See Hale v. Power Co., supra.* The summary judgment granted to the City is

Reversed.

Chief Judge MORRIS concurs.

Judge HILL dissents.

Judge HILL dissenting.

I must dissent. The situation must be divided into two parts: one occurring on the premises of Mrs. Edwards where Akion refued to remove a tire because it was located at the rear of the Edwards' house, and the second at the street when Akion had completed his job of collecting Mrs. Edwards' garbage. Mrs. Edwards had followed Akion to the street, continuing her verbal assault, calling Akion a "S.O.B." It was after Akion had completed his assigned duties that he assaulted Mrs. Edwards, suddenly and without warning, in a public place. The assault arose as a per-

sonal retaliation by Akion against Mrs. Edwards and in no way as furtherance of the employer's business or in the discharge of employment. I find *Munick, supra,* distinguishable. I do not find the assault committed while Akion was acting within the scope of his duties. The decision of the trial judge should be affirmed.